26 C.C.P.A. (Patents)

### SCHNAIER v. FARR.

Patent Appeals No. 4014.

Court of Customs and Patent Appeals.
Dec. 5, 1938.

Richard J. Cowling, of Cleveland, Ohio, for appellant.

Ogle R. Singleton and Charles V. Imlay, both of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office reversed a decision of the Examiner of Interferences awarding priority of invention of the subject matter involved to appellant, and awarded priority of invention to appellee.

The interference is between a patent issued to appellant on March 27, 1934, No. 1,952,688, upon an application filed March 28, 1931, and an application filed by appellee on October 12, 1932. Appellee copied two claims from appellant's patent for the purpose of an interference, and the interference was declared as of October 12, 1934. The issue consists of two counts corresponding to said claims copied as aforesaid; said counts read as follows:

"1. A food product of the character described comprising a hollow shell imbedded in a body composed of a congealed edible substance; said shell being closed at the inner end thereof and being open at the outer end thereof exteriorly of said body, and forming a socket of substantial depth within said body for receiving a separate handle member.

"2. A food product of the character described comprising a hollow shell imbedded for substantially the entire length thereof in a body composed of a frozen edible substance; said shell forming a socket within said body and having an opening thereinto contiguous to one end of said body, and a member received at one end within said socket and projecting at the other end beyond the socket to form a handle."

Appellee being the junior party, the burden was upon him to establish priority of invention by a preponderance of evidence.

The invention in issue consists of a frozen edible product. The details of the invention are sufficiently described in the involved counts.

Preliminary statements were filed and testimony taken by both parties.

The Examiner of Interferences found that appellant conceived the invention as of February 6, 1931, with subsequent constructive reduction to practice by the filing of his application on March 28, 1931. These dates are not challenged by appellee. Said examiner held that appellee was, under the evidence, not entitled to a date of conception earlier than April 1, 1931. He consequently held that appellant was the first to conceive and reduce to practice the invention, and therefore awarded priority to him.

Appellee appealed to the Board of Appeals. While said appeal was pending appellant moved to dismiss the appeal upon the ground that in said appeal appellee had failed to comply with rules 162, 153(a), and 154(b) of the rules of the United States Patent Office.

The Board of Appeals denied appellant's motion to dismiss the appeal, agreed with the Examiner of Interferences as to the dates of conception and reduction to practice by appellant, but after reviewing the evidence on behalf of appellee, held that he was entitled to a date for conception and reduction to practice as of September, 1930. It therefore reversed the decision of the Examiner of Interferences and awarded priority of invention to appellee. From such decision of the board this appeal was taken.

Two issues are presented to us for decision, one a question of law respecting the rules of the Patent Office, and the other a question of fact respecting conception and reduction to practice of the invention by appellee. We will first consider the issue of fact before us.

Appellee testified that he was a member of the firm of Asael Farr & Sons Company, which was in 1930 engaged in the ice and ice cream business; that said concern first started in the ice cream business in June, 1930; that in the summer of 1930 it entered into a contract with the Popsicle Corporation, of which corporation appellant was then president, for the purchase from said corporation of certain apparatus and ingredients for the manufacture of a frozen confection called "Popsicle," as a licensee of the Popsicle Corporation under a patent owned by it; that this confection was frozen on to a stick or handle; that during the summer of 1930 appellee's firm manufactured said confection under said license; that the market season for 1930 ended about

Labor Day; that appellee was very much dissatisfied with the business relations existing between his firm and the Popsicle Corporation, and was dissatisfied with the product manufactured under said license; that he desired to avoid further business relations with the Popsicle Corporation, and was anxious to produce a confection that would not infringe the said patent owned by it; that with this in view he conceived the invention here involved. He testified that "So, to make an article that wasn't frozen to a stick I had to find some way to put a stick in there that wasn't frozen in." He further testified that by enclosing the stick in a small paper bag and inserting the stick with the bag in the partially frozen confection in the mold, the bag would, upon completion of the freezing, freeze to the product, but the stick could be readily extracted; that in September, 1930, he experimented with various types of bags made by him from different kinds of paper. He testified upon this point as follows:

"A. I proceeded to experiment along a new line, of freezing a frozen confection without the stick being frozen into the article. To procure this confection I devised, or thought, and used and made, a paper sack, from different kinds of paper. I used wax paper. I made up a sample, here,—wax paper. I glued them together by hand, in my office,—and we offer those in evidence,—samples of the original sticks and the sacks I used on them.

"* * * * * *

"Q. What kind of paper was used? A. All kinds of paper. I tried every kind of paper that I could use. They worked satisfactorily. I froze them in the popsicle molds, old types of molds,—the long, cylindrical tubes they had. These are the sticks."

It is conceded that the samples above referred to and offered in evidence were not the originals used in 1930.

He further testified that he used wax paper, parchment paper, and common writing paper; that he found the article was successful; that the stick could be pulled out easily without being frozen in; that immediately after the successful demonstration of the article he got in touch with paper salesmen to ascertain if they could produce a sack small enough for the purpose of enclosing the stick. With respect to this matter he testified as follows:

"* * * I immediately got in touch—or, as the paper salesmen would call on me I asked them if they could produce a sack

that small. There wasn't a one that could produce it,—had a sack that size.

"Q. Do you recall any salesman particularly with whom you talked at the time? A. Yes,—Mr. Turnquist, of Ogden Paper Company, who is here present, was one of those salesmen. The others I couldn't recall, because I don't know—I imagine Western Paper had one up there. I asked a number of them, but they called occasionally. Mr. Turnquist calls every week, and I can specifically remember Mr. Turnquist, because he stated that their company had none; that they didn't produce a sack of that size.

"Q. You were not able to get any sacks of that size? A. No, I wasn't able to get any sacks of that size."

Appellee further testified that Messrs. Peterson, Gealta, and Shaw, then employees of the firm, witnessed the successful demonstration of the invention; that during the season of 1931 appellee's firm manufactured the product of another company, the Funny Frost Company; that the confection so produced was without sticks or handles; that during 1931 appellee experimented with the use of cellophane bags for the purpose of securing an improved article. Upon this point he testified as follows:

"Q. That was in the season of 1931? A. Yes. During that fall I experimented on the cel-ophane, the cel-ophane that had been on my desk for eight or ten months, that Mr. Turnquist had brought over. And then after the season was over, I started to experiment on the cel-ophane, because I was not satisfied with the other, and cel-ophane I couldn't make it glue."

Appellee further testified that in the fall of 1931 and spring of 1932 he used a flat stick with the cellophane, which was successful; that he had great difficulty in securing the manufacture of bags of the proper size to enclose the holder, but finally succeeded, and that in 1933 his firm began to produce commercially the article embraced in the counts. Appellee further testified as follows:

"Q. In your opinion, Mr. Farr, was it necessary to have a waterproof or moisture-proof bag? A. Yes; we had to have it moisture-proof.

"Mr. Graham: Object to the question, on the grounds it calls for the opinion of the witness.

"Q. Give your answer. A. It had to be moisture-proof, yes; so that the stick wouldn't freeze to the product."

It is elementary that, in order for a party to establish conception and actual reduction to practice of an invention, there must be corroborating proof of the testimony of the party with respect thereto. It is the contention of appellant here that the only proof of appellee's priority consists of oral testimony given some five years after the claimed dates of the events testified to; that the corroborative testimony of various of appellee's witnesses is contradictory, and therefore appellee has not sustained the burden upon him as the junior party of establishing priority of invention by a preponderance of the evidence.

One of the principal questions involved is whether the events testified to respecting conception and reduction to practice of the invention by appellee took place in 1930 or in the spring of 1931, and subsequent thereto.

The Examiner of Interferences in his decision stated:

"The evidence adduced establishes that the party Farr in 1930 had in mind and was working on the problems incident to the development of the invention in issue but fails to clearly and convincingly establish that the party Farr had in mind the use of a water proof paper in the making of the paper bags and it is therefore clear that although the party Farr had the advantages of this invention in mind he had not in the fall of 1930 conceived a means whereby to accomplish them and can not be accorded a conception of the invention in the fall of 1930. The witness Turnquist states the time as soon after March that he gave to the party Farr some samples of parcyment and glassine paper. Parchment and glassine papers are water proof and are therefore a means of carrying out the invention in issue. The party Farr can not be accorded therefore a date of conception earlier than April 1, 1931, which is after the filing date of the senior party."

The Board of Appeals in its decision reversing the decision of the Examiner of Interferences, after reviewing the testimony in behalf of appellee at considerable length, stated:

"It is our view from the testimony of Farr, Peterson and Shaw, particularly together with some of the other witnesses, that Farr made a complete article of the type called for in these counts and used it successfully in September, 1930 and it is believed that he is entitled to that date for his reduction to practice. Since we have

found that Farr made a reduction to practice prior to any date which the party Schnaier has alleged, we do not agree with the Examiner of Interferences that the party Schnaier was the first to conceive and reduce to practice."

The Examiner of Interferences was apparently of the opinion that, according to the testimony, the only waterproof papers used by appellee in reducing the invention to practice were parchment and glassine. We think it is fairly established by the testimony of one Turnquist, a witness in behalf of appellee, that he furnished to appellee glassine and parchment paper in the spring of 1931, and that such paper had not been used by appellee prior to that time. If there had been no reduction to practice with the use of paper other than parchment and glassine prior to appellant's entry into the field, February 6, 1931, then we would agree with the Examiner of Interferences that priority of invention should be awarded to appellant. However, appellee testifies positively to the use of wax paper (which is a waterproof paper) in September, 1930, and this testimony is corroborated by the witness Peterson. The witness testified that glassine paper was not the first paper used in appellee's experiments.

While it is true that some witnesses in behalf of appellee testified that glassine paper was used in September, 1930, appellee's counsel admit that the first established use of such paper was in the spring of 1931.

It is appellant's contention that the evidence does not establish that the events testified to by appellee and his witnesses as having taken place in 1930 did actually so take place; and that in fact it is fairly deducible from the evidence that such events did not take place until 1931, after appellant had conceived the invention and had constructively reduced it to practice in March, 1931.

Both of the Patent Office tribunals agree that the evidence establishes that appellee began work upon the invention in September, 1930, as claimed by appellee, but the Examiner of Interferences held that it was not established that appellee realized that a waterproof bag was necessary to carry out the invention until the spring of 1931. In this the board differed with the examiner, as we do. It seems clear that appellee quickly realized, after he began his experiments, that a waterproof bag was necessary; that he used wax paper, which is

waterproof; and that the experiment proved successful in 1930.

It is true that the first documentary evidence in the record relating to appellee's activities is dated in 1932, and that no drawings embracing the invention were made prior to 1932. Appellee explains that, while he had successfully demonstrated the invention, it was not until he adopted the use of cellophane for the bags that he was satisfied that the invention could be profitably and commercially exploited, and that he had great difficulty in securing the manufacture of bags small enough for his purpose.

With respect to the absence of drawings, it appears that the invention is very simple and it would seem that, except for patent purposes, drawings were unnecessary. We observe from the stipulated testimony in behalf of appellant that he made no drawings of his invention, other than a pencil sketch which was not introduced in evidence, prior to the preparation of his application for a patent.

It is the rule that where oral testimony alone is produced to establish a fact, and especially where such testimony is given long after the occurrence of the events testified to, such testimony will be most carefully scrutinized. Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153; Pflueger v. Jordan, 76 F.2d 293, 22 C.C.P.A., Patents, 1123.

It is appellant's contention that the experiments of appellee testified to by his witnesses more likely took place in 1931 than in 1930. However, the testimony clearly establishes that the contract with the Popsicle Corporation was made in June of 1930; the contract is in evidence and bears date of June 6, 1930. It further appears that the relations of the parties thereto in carrying out such contract were very unsatisfactory, and that it was for that reason appellee sought, when the 1930 season's business closed, to devise an article that would take the place of the popsicles produced under the license from the Popsicle Corporation.

These facts clearly indicate that the events here in question took place in 1930. The Examiner of Interferences is in agreement with the board that appellee's activities with respect to the invention began in 1930.

The fact that some of appellee's witnesses testified in effect that glassine paper was used in 1930, when such paper was not

in fact used until 1931, does not in our opinion destroy the probative force of their testimony with respect to the use of wax paper in 1930.

We are not convinced that the Board of Appeals erred in finding that appellee was the first to conceive and reduce the invention to practice.

With respect to appellant's motion to dismiss appellee's appeal to the board upon the ground that appellee failed to comply with rules 162 and 153 of the rules of the Patent Office, the Board of Appeals in its decision stated:

"The party Schnaier has moved to dismiss the appeal of the party Farr on the ground that Farr has not filed the proper copies of the record as required by Rule 162 within the time specified in the rule or that if they were filed, no copy of the same was given to the appellee as required under Rule 153. Rule 162 provides for an extension of the time within which the specified copies should be filed and the three copies were filed by appellant on September 2, 1936. The petition to dismiss states that the party Farr gave due notice of appeal and it appears that these copies of the record required to be filed under Rule 162 are not to become a part of the record and it is believed that they do not fall within the requirements of Rule 153 as to the serving of every paper filed upon the other parties."

Rule 153(a), and so much of rule 162 as is here pertinent, read as follows:

"153(a) Every paper filed in the Patent Office in contested cases must be served upon the other parties as provided in rule 154(b). This includes all appeals in such cases.

"162. * * * * *

"Where, however, a record does not exceed one hundred and twenty-five letter-sized double-spaced typewritten pages or the equivalent thereof, printing may be dispensed with upon request: Provided, however, That there shall be furnished, in addition to the original transcript, clearly legible copies of the typewritten testimony, which shall be certified to as being true copies by the party filing the same, one for the office, which shall not become part of the record, and one for each adverse party, to be filed within the time specified for filing printed copies: And provided further, That where printing has thus been dispensed with, the appellant, if appeal is taken from the decision of the examiner of interferences, may file three clearly legible typewritten copies of the record, both of his own and the appellee, if the same have not been printed, and which shall not become a part of the record, within thirty days from the taking of the appeal. If the copies of the record are not filed within the time specified or within any extension thereof granted by the board of appeals, the appeal shall be dismissed.

"*     *     *     *     *     *."

It will be observed that rule 162 expressly provides that the copies referred to in the last proviso thereof shall not become a part of the record. The provision requiring the appealing party to furnish legible typewritten copies of the record was wholly for the convenience of the board in the performance of its duties. United States, etc., v. Coe, 67 App.D.C. 207, 91 F. 2d 238.

In view of this fact, and the further fact that it is expressly provided that the copies provided for in said last proviso of rule 162 shall not become a part of the record, we are of the opinion that such copies are not within the purview of rule 153(a).

While appellant contends that service of a copy upon the adverse party is necessary to enable him to verify the accuracy of the copies filed with the board, and while this may be very desirable, we do not think that this is contemplated by the rules, and is therefore not required. We think that rule 153(a) is limited to papers which are to become, or which it is sought to have made, a part of the record in the case, and does not include copies of papers filed merely for the convenience of the board.

We therefore conclude that the board did not err in refusing to dismiss appellee's appeal to it.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.